**In re Timothy N. PHILLIPS and Cindy L. Phillips, Debtors.**

No. 02–66299.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Jan. 8, 2008.

Cindy L. Phillips Lexington, OH, Pro se.

Robert Goldberger, Mansfield, OH, Timothy N. Phillips Sr., Lexington, OH, Robert Goldberger, Mansfield, OH, for Debtors.

Toby L. Rosen, Canton, OH, for Trustee.

## MEMORANDUM OF OPINION

RUSS KENDIG, Bankruptcy Judge.

This matter is before the Court on the Motion to Vacate Order on Debtors' Motion to Find Mortgage Current, filed by creditor MTGLQ Investors/Ocwen ("Ocwen") on November 19, 2007 under Federal Rule of Civil Procedure 60(b)(1) and (6), incorporated (with some alterations) into bankruptcy practice by Bankruptcy Rule 9024. For the reasons set forth below, Ocwen's motion is granted.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a Motion to Find Mortgage Current on October 12, 2007. No responses were filed and the Court entered an order granting the motion on November 5, 2007. On November 19, 2007, Ocwen filed the instant motion to vacate.

The Court held a hearing on this matter on December 19, 2007. At the hearing, Ocwen's counsel argued that Ocwen was never served with the original Motion to Find Mortgage Current, and that had it received such notice, it would have filed a timely objection. Ocwen noted that it was the assignee of the original claimant, Bank One N.A. c/o Litton Loan Servicing, L.P. ("Bank One"), and that it had filed a Notice of Transfer on October 28, 2004.

At the same hearing, Debtors' counsel then stated that the Notice of Transfer asked the clerk to notify the assignee of all further' filings, which Debtors' counsel believed would have in fact transpired. Believing that the Bankruptcy Court's computer would therefore effectuate service electronically upon Ocwen, Debtors' counsel did not serve Ocwen by regular U.S. mail or any other method. Debtors' counsel noted that he was served with the instant motion via e-mail from the Court, and he assumed that Ocwen would have similarly received service of Debtors' Motion to Find Mortgage Current.

## LEGAL ANALYSIS

### I. Overview and Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides, *inter alia*, that a court may relieve a party from a final order for "mistake, inadvertence, surprise, or excusable neglect," Fed.R.Civ.P. 60(b)(1), or "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6) (prior to amendment Dec. 1, 2007). The Court emphasizes at the outset that this opinion does not affect the substance of the other claims raised by Debtors' counsel at the hearing regarding alleged flaws in both the assignment of claim from

Bank One to Ocwen, and the creditor's proof of claim.

The Court now turns to address the mistakes constituting the grounds for the order for relief. In so doing, the Court aims to clarify important technical details about the Bankruptcy Court's electronic filing system—as well as, apparently, misunderstandings about the role and responsibilities of the clerk's office.

## II. The Bankruptcy Court's Electronic Service Systems

There are actually two ways in which a party [1] may be served electronically by the Bankruptcy Court. The first is by *CM/ECF electronic notice.* The second is by *BNC service.* Importantly, it is possible for a party or a party's counsel to be on one list and not the other. As will be seen, Ocwen's counsel was in fact on one and not the other.

### A. CM/ECF Electronic Notices

Each case has an Electronic Mail Notice List associated with it, which is generated automatically by the Case Management/Electronic Case Filing ("CM/ECF")

system.[2] The term Electronic Mail Notice List is used because it is the term used in the CM/ECF system, as explained in footnote 4 below. This list is not generated by the clerk's office. A party will be automatically added to the Electronic Mail Notice List within CM/ECF when it first *electronically dockets an event* in the case *if* the registered user has created the attorney/party association by checking the "represented by" box when docketing that event. The software cannot actually "read" the text of submitted documents, and therefore will not copy addresses (physical or electronic) from signature blocks, captions, or document bodies. Additions to the list come from the account information of the user submitting the document and the user-supplied attorney/party association information. Because the addition is automatic, any request in the body of a document to be added to the CM/ECF list is immaterial. Even if an attorney party dockets a document and specifically requests *not* to be added to the CM/ECF list, the utility will do so automatically if the attorney/party association has been created by checking the appropriate box.[3]

1. The CM/ECF system itself refers to all persons filing documents as "parties." The Court emphasizes that this is *not* synonymous with the legal definition of a "party" to a case, and cautions against confusing the two. The term "party" has a non-specific, yet highly specific, meaning in CM/ECF. "Party" is used to designate any person or entity that appears on any list within CM/ECF Different rules are used to select members of each list, yet the members of each list are referred to as "parties" of that list. One may be a party of one list, but not another, *in the same case.* The term "party" has been stripped of all meaning by its inconsistent and contradictory meaning within the system.

2. CM/ECF is an automated case management and docketing system that operates in a Web browser environment; it enables the Court to create electronic case files and implement

electronic filing over the Internet directly to the Court's computer. As of January 4, 2008, the Court is currently running version 3.1.7 of this software suite. On November 19, 2007, when the instant Motion to Vacate was filed, the Court was running version 3.1.6; on October 12, 2007, when the underlying Motion to Find Mortgage Current was filed, the Court was running CM/ECF version 3.1.5. The Court was running version 2.5 on October 28, 2004, when Ocwen filed the Transfer of Claim at issue. However, the mechanics of the system's electronic service feature, to the extent relevant to and detailed in this opinion, have not been materially altered over the course of these releases.

3. By contrast, a creditor party (e.g., a bank employee), as opposed to an attorney party, will not be added to the Electronic Mail Notice List for a case by docketing an event

Any party who is added to the Electronic Mail Notice List for a given case will be notified of all future docket entries in that case for which service upon any party is required, regardless of whether they are a party in interest in that particular matter.

 When a party dockets an event on CM/ECF, they are provided two copies of a Notice of Electronic Filing (NEF) that displays the Electronic Mail Notice List, which is the names and e-mail addresses of the parties to which notice will be electronically mailed.[4] The first copy is displayed immediately after the party is finished submitting its document, on screen, as an HTML display. The second copy is sent to the e-mail address of the user, for his or her records.[5] Had Ocwen's counsel electronically docketed the Transfer of Claim herself, her name and e-mail address would have appeared in that receipt (and in all future receipts on the Docket Report for this case); she did not.[6] One such receipt would have been the one generated for Debtors' counsel when he submitted Debtors' Motion to Find Mortgage Current, so Debtors' counsel knew or should have known that no electronic service was effectuated upon Ocwen by the mere fact of his electronic submission. At the least, he should have known to inquire further. The certificate of service attached to Debt-

themselves rather than through counsel, regardless of any requests made in the body of any document so docketed.

4. The CM/ECF electronic receipt may also include a list of parties to whom notice will *not* be electronically mailed; however, this list is generally incomplete. It is only a list of those entities or persons that are parties (in the CM/ECF sense) but are not Registered Users. A Registered User is a person who has requested and been assigned a CM/ECF login account which entitles them to file documents and create docket entries. A Registered User in the Northern District of Ohio may only be an individual, even if that individual acts solely in a representative capacity, such as a bank employee. Most Registered Users are attorneys. By parties "in the CM/ECF sense," this means that they have been denominated as a party by someone ticking a box to tell the system they are a party, but since they are not Registered Users, they will not receive notice. Other persons or entities that have not had the party box checked will also *not* be served, but they will *not* be on the list of parties that did not receive notice because they haven't been denominated as parties in the CM/ECF sense even though they may be parties in the legal sense and every other sense known to humankind. This list is deceptive and, in any normal human sense, wrong. The list of parties to whom notice *will* be electronically mailed, however, *is* complete. A party whose name and e-mail do not appear on the latter list is conclusively presumed not to have been electronically served by CM/ECF.

5. The electronic receipt is available for future viewing by clicking the silver globe icon that appears at the start of any docket entry in the Docket Report. In addition, the complete list of parties who will receive e-mail notice and service in a case (the Electronic Mail Notice List) can be accessed in CM/ECF at Utilities > Mailings > Mailing Info for a Case. The Manual Notice List displayed therein will invariably be incomplete and cannot be relied upon as a comprehensive list of all parties who might need to be served manually; however, the Electronic Mail Notice List *is* comprehensive. All parties on the Electronic Mail Notice List will receive electronic service; no other parties will.

6. The Court's records reflect that Ocwen submitted its Transfer of Claim in hard copy, not electronically. Therefore, no representative or counsel for Ocwen electronically docketed any event that would have triggered addition to the Electronic Mail Notice List. The clerk's office docketed the event for Ocwen; however, when the clerk's office dockets an event for a party, they do not log in as that party, and the clerk's office cannot manually add someone to the Electronic Mail Notice List. The automated system that lifts users' data from the account information of the logged-in account is the exclusive means by which a party can be added to the Electronic Mail Notice List.

ors' Motion to Find Mortgage Current, which listed Ocwen as a recipient of service, was therefore both wrong and misleading. Debtors' counsel was under the impression that either the Court's computer or the clerk's office would pick that text out of the document and issue service automatically from the Court. Neither is true. The Court has no such advanced optical character recognition utility, and it is not the function of the clerk's office to serve parties' documents for them, any party's requests for them to do so notwithstanding, The Court's records show that Martha Spaner, counsel for Ocwen, was not added to the Electronic Mail Notice List until November 19, 2007, the day she first filed a document in this case: the instant Motion to Vacate.[7]

A party who receives a NEF via the Electronic Mail Notice List does not actually receive a copy of the document served (e.g., as an attachment to the e-mail). Rather, they are notified that a document has been filed, allowing them to login and access the document on the Docket Report. All recipients of the NEF, as public access users, may view a document once without charge, and can print and/or download the document during this first viewing and thereby avoid future charges.

## B. BNC Service

The Transfer of Claim did include the following text: "Assignee [Ocwen] further requests that it be added to the mailing matrix in the above case pursuant to Bankruptcy Rule 2002, so as to receive copies of all notices and pleadings sent to creditors or other parties in interest." (Transfer of Claim 1.) Many attorneys and entities may not understand the limited reach of Rule 2002. Rule 2002 and its subsections set forth several lists of actions of which the Court is required to serve notice on parties in interest. *See* Fed. R. Bankr.P.2002(a), (b), (d)-(f), (k). Most motions, however—including, for the purposes of the instant motion, motions to find mortgages current—do not appear on any of those lists.

For motions that appear on that list, the Court will use a combination of CM/ECF electronic notices and its other service system, the Bankruptcy Noticing Center's system, commonly referred to as the

---

**7.** It is likely that some of the misunderstandings concerning the capabilities and functions of the CM/ECF system were induced by promotional materials produced to induce acceptance of the system by practicing lawyers. In one training video produced by the Administrative Office of the United States Courts, one enthusiastic booster of CM/ECF says: "So you have filing costs, you have postage costs, you have transportation costs, you have messenger costs, all of those costs are eliminated with electronic filing because you can file, serve, send a copy to your client all electronically without any paper." Streaming Video: CM/ECF: The Attorney's Perspective (Administrative Office of the U.S. Courts 2002) (available at http://pacer.psc.uscourts.gov/ecfcbt/, also on file with the court). There are similar statements in other places. Based upon the Court's limited experience, these claims are untrue. A review of several other cases reveals that there is widespread misun-

derstanding of how the system works and widely divergent practices. Some cases revealed attorneys making the same erroneous assumption as Debtors' counsel and certifying that service would be made upon parties by the system in cases in which that is clearly not true. In others, it appears that lawyers serve hard copies by mail to everyone and make no representation about service by the system, so that some are served twice, but at least everyone is served. There are other methods that are not entirely clear; but it is obvious the system's capabilities are widely misunderstood. The Court intends to make specific requirements about service in the immediate future, including requiring any statement that a person or entity will be served by the CM/ECF system to be accompanied by a copy of the Electronic Mail Notice List *or* a direct affirmation that the parties so identified are on the Electronic Mail Notice List.

498

"BNC." BNC can generate both electronic and hard copy notices, and unlike the automated CM/ECF system, is primarily used manually by the clerk's office. Its primary data source is the Creditor Mailing Matrix. The Creditor' Mailing Matrix is a term used by the CM/ECF system; it is not, as one might suspect, a list only of creditors. It is a comprehensive mailing matrix of entities and persons related to the case, including persons who are not creditors, such as the trustee and debtor's attorney. *But* it contains only those persons that are added to the database, which means they are added in a manner in which the computer system will recognize them and add them to the Creditor Mailing Matrix. This would not include, for example, a person simply referenced in the text, caption, or signature block of a document without further action.[8] By contrast, there is no electronic link between the Electronic Mail Notice List system of CM/ECF and the Creditor Mailing Matrix—the former will never import data from the latter. Even had Ocwen been added to the Creditor Mailing Matrix at the time,[9] it would not have received automatic service of Debtors' motion because the Court does not serve parties' motions via BNC unless a given motion falls within a specific provision of Rule 2002.

■ The Court also uses BNC as its own notice-generation system for documents that issue from the Court, in addition to those required by Rule 2002. The most common examples are orders and memoranda. Orders and memoranda issue from the Court; motions issue from parties. Orders, therefore, will be served by the court via the BNC system. Motions will not. Parties retain the responsibility to see that the documents they submit are properly served, unless it is one of the narrow range of documents that (1) Rule 2002 directs to be served by "the clerk, or some other person as the court may direct," *e.g.*, Fed. R. Bankr.P.2002(a), (b), (d), (f), (k); and (2) the Court has not directed, pursuant to the above "some other person" phrase, that service be effectuated by the party submitting the document.

### III. Grounds for Relief

■ Ocwen has filed its Motion to Vacate under Fed.R.Civ.P. 60(b)(1) (relief from a final order for mistake, inadvertence, surprise, or excusable neglect) and (6) (any other reason justifying relief). However, the court does not reach the technical merits of Ocwen's 60(b) argu-

---

8. The Creditor Mailing Matrix does not appear to be a mailing matrix because the system is programmed to sort and list its contents a most unusual fashion that defies simple understanding and is locally referred to as being in "psychedelic order." A husband and wife with the same address and last name, for example, may appear nowhere near one another on the matrix.

9. Ocwen's request for addition to the Creditor Mailing Matrix should have been effectuated at the time; that it was not was an error in the clerk's office. Requests for addition to the Creditor Mailing Matrix, unlike requests for addition to the Electronic Mail Notice List, can be made in the body of a document and are processed manually by the clerk's

office. Ocwen was still added to the Creditor Mailing Matrix on November 19, 2007, the day its counsel submitted the instant Motion to Vacate, by the CM/ECF system, not the clerk's office. The CM/ECF system detects when an attorney files a document on behalf of a creditor (assuming the attorney properly identifies his or her client as a creditor when entering client information) who is not yet on the Creditor Mailing Matrix, and adds the client to the matrix automatically. The same action on the part of Ocwen's counsel—electronically docketing the Motion to Vacate—therefore had two simultaneous but separable effects: adding Martha Spaner to the Electronic Mail Notice List and adding MTGLQ Investors to the Creditor Mailing Matrix.

ment because more fundamental concerns intervene before the court would reach the Rules of Civil Procedure. The grounds for relief here are far clearer and simpler than that. Through no fault of Ocwen's, Ocwen was not served. This is a violation of procedural due process. The court need look no further.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Debtors' counsel, not Ocwen's, bore the primary responsibility to see that service was proper for Debtors' Motion to Find Mortgage Current. Ocwen clearly misunderstood the workings of the CM/ECF and BNC systems, as well as Bankruptcy Rule 2002, in the Transfer of Claim filed in 2004; however, these were not the immediate cause of Ocwen's failure to receive service. It is clear that Ocwen, an interested party, received no notice of the pendency of the action and was afforded no opportunity to present its objections. Accordingly, the proceeding that produced the Order Granting Debtors' Motion to Find Mortgage Current cannot "be accorded finality."

## IV. Conclusion

However understandable (or widespread) the misunderstandings regarding the Court's electronic systems and their differences might be, one such misunderstanding nevertheless produced a constitutionally infirm result in this case. Debtors' counsel did not send the notice to which Ocwen was entitled. The order flowing from such a patently infirm proceeding cannot stand.

Ocwen's Motion to Vacate will therefore be granted by a separate order to be entered concurrently with this opinion.

## ORDER ON MOTION TO VACATE ORDER ON DEBTORS' MOTION TO FIND MORTGAGE CURRENT

This matter is before the Court on the Motion to Vacate Order on Debtors' Motion to Find Mortgage Current, filed by creditor MTGLQ Investors/Ocwen ("Ocwen") on November 19, 2007. For the reasons set forth in the accompanying memorandum of opinion, Ocwen's motion is **GRANTED.**

The Court's order granting Debtors' Motion to Find Mortgage Current, entered November 5, 2007, is hereby **VACATED.**

It is so ordered.